UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BEVERLY BAKKEN

Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

Defendant.

NO. C3:13-CV-05869-JLR-JLW

REPORT AND RECOMMENDATION

BASIC DATA

Type of benefits sought:

(X ) Disability Insurance

(X) Supplemental Security Income – Disability

Plaintiff's:

Sex: Female

Age: 47 at application, 49 at ALJ hearing

Principal Disabilities Alleged by Plaintiff: dysthymic disorder, generalized anxiety disorder, PTSD, alcohol dependence in remission, hepatomegaly, neck and back pain

Disability Allegedly Began: Original date July 10, 2009, amended to February 25, 2010

Principal Previous Work Experience: title insurance sales, title insurance examiner

Plaintiff Last Worked**:** July 2009

Education Level Achieved: BA degree

PROCEDURAL HISTORY – ADMINISTRATIVE

Before ALJ:

Date of Hearing: April 10, 2012

Date of Decision: June 28, 2012

Appears in Record at: Decision AR 8-31, Hearing Transcript AR 33-71

Summary of Decision:

Claimant has not engaged in substantial gainful employment since alleged onset date. She has the severe impairments of dysthymic disorder, generalized anxiety disorder, PTSD, alcohol dependence, hepatomegaly secondary to alcohol, sacroiliac disfunction, and neck strain. These impairments, separately or in combination, do not meet or medically equal a Listing. Claimant has the residual functional capacity ("RFC") to perform light work, with some postural limitations. She should avoid concentrated exposure to vibrations and hazards. She can perform simple routine tasks. She can have occasional interaction with coworkers but no interaction with the public. She is unable to perform her previous work. However, based upon the testimony of a vocational expert ("VE"), Plaintiff can work as a maid, photo copy machine operator, file assembler, and document preparer. Therefore, Plaintiff is not disabled.

Before Appeals Council:

Date of Decision: August 2, 2013

Appears in Record at: AR 1-7

Summary of Decision: declined review

PROCEDURAL HISTORY – THIS COURT

Jurisdiction based upon: 42 U.S.C. § 405(g)

Brief on Merits Submitted by (X) Plaintiff (X) Commissioner

RECOMMENDATION OF

UNITED STATES MAGISTRATE JUDGE

(X) Reverse, and remand for further proceedings.

SUMMARY OF RECOMMENDATION

The ALJ gave controlling weight to two medical consultants who neither treated nor examined Plaintiff. This was error, because the medical professionals who treated and/or

examined Plaintiff consistently reported impairments of disabling severity. Plaintiff is entitled to a determination that she was disabled during the relevant period.

The record also establishes, however, that Plaintiff abused alcohol for at least a portion of the relevant period. The Commissioner is therefore required to determine whether her alcohol abuse was a contributing factor to her disability. The court should reverse the Commissioner's decision, and remand the case for a determination of this issue, and for a new decision as to whether she is entitled to an award of benefits.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court must set aside the Commissioner's denial of Social Security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## EVALUATING DISABILITY

The claimant bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal

citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *See also Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).

## ISSUES ON APPEAL

A. Did the ALJ give legally sufficient reasons to discredit Plaintiff?

B. Did the ALJ give legally sufficient reasons to reject the opinions of Drs. Fatima, Neims, and Ratcliffe?

C. Was the ALJ's determination of Plaintiff's RFC supported by the record?

D. Were the ALJ's hypothetical questions to the vocational expert appropriate?

E. How do the Bustamante procedures for alcohol abuse apply to this case?

## DISCUSSION

### A. Plaintiff's Credibility

The ALJ is responsible for determining credibility. *Andrews*, 53 F.3d at 1039. In order to reject the claimant's complaints, the ALJ must provide "specific, cogent reasons for the

disbelief." *Lester*, 81 F.3d at 834. Without evidence of malingering, the reasons for rejecting the claimant's testimony must be clear and convincing. *Id*. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*.

The ALJ found Plaintiff's credibility suspect. AR 18. "The claimant is not fully credible because her reports to medical personnel are inconsistent." AR 18. This inconsistency stems from the contradictory information concerning Plaintiff's alcohol use and sobriety. AR 18. The ALJ specifically identified the discrepancies. AR 18. In February 2010, Plaintiff reported that she had not consumed alcohol for three years. In August 2010, she reported sobriety since November 2008. And, November 2011, she stated that her last alcohol abuse had been three years earlier except for a relapse in July 2010. However, medical records from March and April 2009 show Emergency Room visits during which Plaintiff admitted to having consumed large quantities of vodka. AR 18, 701, 705. In June of 2009, Plaintiff visited the Emergency Room with symptoms of alcohol withdrawal. AR 699.

These alcohol related Emergency Room visits took place during times of alleged sobriety. Given these discrepancies, the ALJ had specific and cogent reasons for determining that Plaintiff lacked credibility. There was no error in this respect.

B. Medical Evidence

The ALJ evaluates medical evidence as part of the record when determining disability. 20 C.F.R § 416.927(b). If contradicted by another doctor, the opinions of treating and examining physicians may only be rejected for specific and legitimate reasons based on substantial evidence in the record. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that

justifies the rejection of the opinion of either an examining physician *or* a treating physician." *Lester*, 81 F.3d at 831.

The ALJ gave nonexamining physicians Drs. Clifford and Fisher significant weight and controlling weight. Dr. Fisher is a state agency psychological consultant who reviewed the medical records and issued an opinion on September 28, 2010. AR 20, 746-48. He found Plaintiff's impairments "not significantly limited" to "moderately limited" in all areas of understanding and memory, concentration and persistence, social interaction, and adaptation. AR 747. Dr. Fisher opined that Plaintiff was capable of carrying out simple instructions as her symptoms are moderately severe without alcohol abuse. AR 749. The ALJ determined that, "[s]ignificant weight is given to Dr. Fisher because his opinion [is] supported by the medical record as a whole. For example, the claimant demonstrated an ability to interact with others based on her presentation during numerous therapy sessions where her attitude was often found to be within normal limits and she was cognitively intact." AR 20. Dr. Fisher's opinion was confirmed by Dr. Clifford, another state agency psychologist, who did not examine Plaintiff but reviewed the records on January 17, 2011. AR 21, 851-2. The ALJ used the opinions of these reviewing consultants to evaluate all other medical opinions.

"Although the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)(citing *Magallanes*, 881 F.2d at 752). In this case, the opinions of non-evaluating, Social Security reviewers, Drs. Fisher and Clifford differed greatly from the opinions of treating/evaluating doctors Ratcliffe, Neims, and Fatima.

Dr. Ratcliffe examined Plaintiff two separate times, February 25, 2010 and March 8, 2011. In February 2010, Dr. Ratcliffe observed tearfulness, circumstantial speech, obsessive thinking, emotional lability, and agitated depression. AR 344. He opined that Plaintiff had complex and severe depression and assigned an extremely low Global Assessment of Functioning (GAF) of 43. AR 341, 345. Her mini mental status exam was on the low end of normal. AR 345. He described Plaintiff as an extremely depressed, severely anxious and markedly agitated woman. AR 347.

In March 2011, Dr. Ratcliffe made similar observations of obsessional thinking, tearfulness, and circumstantiality. AR 859. He observed that Plaintiff's concentration was disrupted by her mood and obsessional thinking. AR 858. She had prominent vegetative symptoms that would disrupt work attendance and performance. AR 858. She has difficulty focusing, and is easily overwhelmed with panic and scattered thinking. AR 860. Her obsessional thinking and depression disrupt her focus and concentration and impair productivity. AR 860. Dr. Ratcliffe stated that Plaintiff had a chronic and severe disorder requiring lengthy treatment. AR 860.

The ALJ gave little weight to Dr. Ratcliffe's two opinions because they heavily relied upon Plaintiff's dubiously reliable subjective complaints, and Plaintiff had not fully disclosed her alcohol use. AR 22. The ALJ also remarked that Dr. Ratcliffe's opinion is not supported by the opinions of non-examining physicians, Drs. Fisher and Clifford. To be legally sufficient, these reasons must be specific, legitimate, and based on substantial evidence in the record. *Id*.

The ALJ reasoned that Dr. Ratcliffe's opinions relied heavily on Plaintiff's subjective complaints that were not fully credible. AR 22. However, Dr. Ratcliffe specifically stated that he observed no evidence of malingering. AR 861. Dr. Ratcliffe's reports include observations as well as recitation of Plaintiff's self-reported symptoms and issues. Over the course of both

evaluations, Dr. Ratcliffe observed Plaintiff's mood, affect, anxiety, tearful state, circumstantial and obsessional speech, agitation, and scattered thoughts. AR 341-347, 858-861. These observations formed part of the basis for his opinion that Plaintiff is extremely depressed, severely anxious, and markedly depressed. AR 347. Dr. Ratcliffe employed his own observations and professional judgment in formulating his opinion. Therefore, the ALJ's assertion that Dr. Ratcliffe's opinion was based upon Plaintiff's subjective complaints is not a legitimate reason based on substantial evidence in the record and cannot support the rejection of Dr. Ratcliffe's medical opinion.

The ALJ also dismissed Dr. Ratcliffe's opinion because Plaintiff had not fully disclosed her alcohol use. AR 22. The record indicates that Plaintiff began outpatient treatment for her alcohol abuse in April 2010. AR 949. Other than a relapse in July 2010, she was in compliance with her treatment. AR 934-951. As a result, she may have been abusing alcohol at the time of her February 2010 evaluation by Dr. Ratcliffe, but was apparently actively participating in her recovery by the March 2011 evaluation. Given her sobriety, her alcohol use should not have affected the results of her March 2011 examination. Therefore, her undisclosed alcohol use is not a legitimate reason to disregard the opinion that Dr. Ratcliffe formulated in March 2011, which was also highly consistent with his earlier evaluation.

As the final reason for assigning little weight to Dr. Ratcliffe's opinions, the ALJ stated that the opinions were not supported by those of Drs. Fisher and Clifford. AR 22. This was error. That Dr. Ratcliffe's opinion—formulated after two separate evaluations—did not accord with that of the reviewing physicians is not a legitimate reason for rejecting his opinion as an evaluating physician. Furthermore, Drs. Clifford and Fisher examined the record before Dr. Ratcliffe performed his second evaluation, which was largely consistent with his first. They developed their opinions based on an incomplete record. As a result, the ALJ failed to provide

specific and legitimate reasons supported by substantial evidence in the record to reject Dr. Ratcliffe's opinions.

Dr. Neims evaluated Plaintiff in September 2009. AR 364-76. He found Plaintiff to be anxious, fearful, ruminative, lethargic, irritable, tremulous, isolated and withdrawn, with signs of vegetative depression. AR 366. She was had eroded and decayed teeth. AR 373. She was sleepy with pressured and rambling speech. AR 373. She completed some of the mental status exam tasks, but abandoned others. AR 373-4. Dr. Neims opined that Plaintiff had moderate impairment in her ability to learn new tasks and perform routine tasks. AR 368. She had marked impairment in her ability to exercise judgment and make decisions. AR 368. She also had moderate impairment in her social functioning. AR 368. However, due to Plaintiff's alcohol abuse, Dr. Neims could not determine whether the mood disorder was substance abuse induced or independent. AR 367.

The ALJ gave little weight to Dr. Neims opinions because it was not supported by the opinions of Drs. Fisher and Clifford. As discussed above, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." *Id*. This is not a legitimate reason to reject Dr. Neims' opinion as to Plaintiff's impairments.

The ALJ also reasoned that "Dr. Neims did not have the opportunity to consider the claimant's participation in group therapy or regular attendance at Alcoholics Anonymous, which indicates greater social functioning than Dr. Neims found." AR 21. The controlled environment of therapy and AA provides an opportunity for social interaction. Plaintiff's experience with these meetings could provide insight into Plaintiff's social functioning. In this case, Dr. Ratcliffe, who evaluated Plaintiff after significant attendance in group therapy, still identified substantial issues in social functioning. AR 858-861.

Dr. Fatima is a psychiatrist who evaluated Plaintiff and treated her mood disorders with psychotropic medication. AR 743-5. In September 2010, Dr. Fatima's evaluation shows depressed mood, difficulty focusing, scattered and jumping thoughts, and anxiety. AR 744. Plaintiff had limited insight but her judgment was intact and she was cognitively aware. AR 744. Dr. Fatima assigned a GAF score of 50. AR 745. The ALJ seemingly accepted several of Dr. Fatima's observations, but focused on the more positive aspects of the evaluation. "Despite the claimant's symptoms, she had sufficient cognitive functioning to perform simple routine tasks. Dr. Fatima observed that the claimant was anxious, depressed, and had limited insight with scattered thoughts and difficulty focusing on one topic. However, the claimant was cognitively aware and her judgment remained intact." AR 17. Plaintiff contends that the ALJ erred by failing to specifically address the GAF of 50, which shows serious impairment in social and occupational functioning. DKT 21/7.

The ALJ "need not discuss *all* evidence presented," but "must explain why significant probative evidence has been rejected." *Vincent o/b/o Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (internal citation omitted). Here, the ALJ addressed the weight of GAF scores. "It should be noted that the record contained extremely divergent GAF scores including a low of 35 to a high of 57. While the clinical findings and functional assessments provided by the clinicians who provided these scores have been thoroughly reviewed, the scores themselves are given very little weight because they lack probative value in this analysis." AR 22. The ALJ further explains that the GAF scores rate symptoms or functioning, but the scores in the record do not indicate which the clinicians rated. AR 23. The ALJ considered this issue particularly relevant to the analysis of the claimant's ability to perform work activities because the symptoms are based on the claimant's suspect statements. AR 23. "As the claimant's statements about functioning are less than fully credible, a score based on such statements is of

little value." AR 23. The ALJ fully explained the reasoning behind rejecting the probative evidence of Plaintiff's GAF scores. Therefore, the ALJ did not err by failing to consider and incorporate Dr. Fatima's low GAF rating.

While failure to incorporate the low GAF score was not error, the ALJ's did err by adopting the opinions of the reviewing medical consultants despite substantial contradicting evidence by treating and evaluating physicians.

The opinions of Drs. Fatima, Neims, and Ratcliffe are highly consistent. All three found an extremely depressed, anxious woman who demonstrated circumstantial, obsessive thinking, limited insight, scattered thoughts, and difficulty focusing. All three assigned GAF scores below 50, showing serious impairment. The only medical source opinions in disagreement are those of the nonexamining physicians. "In the absence of record evidence to support it, the nonexamining medical advisor's testimony does not by itself constitute substantial evidence that warrants a rejection of either the treating doctor's or the examining psychologist's opinion." *Lester*, 81 F.3d 832. The ALJ's reliance on reviewing doctors, rather than consistent reports from evaluating and treating medical professionals was error.

C. <u>The ALJ's Determination of Residual Functional Capacity</u>

As discussed above, the ALJ's determination of Plaintiff's RFC was erroneously based upon the unsupported conclusions of the two nonexamining physicians. The RFC determination was therefore not supported by the record.

D. The <u>Hypothetical Questions Posed to the Vocational Expert</u>

"An ALJ must propose a hypothetical that is based on medical assumptions supported by substantial evidence in the record that reflects each of the claimant's limitations." *Osenbrock v. Apfel*, 240 F.3d 1167, 1163 (9th Cir. 2001). The ALJ's hypothetical questions to the vocational expert in this case (AR 68-70) were based upon the ALJ's erroneous

determination of Plaintiff's RFC. The vocational expert's responses to those questions are therefore of no evidentiary value.

Plaintiff's counsel posed three additional hypothetical questions to the vocational expert. AR 70-72. These questions reflected medical opinions, including those formulated during Dr. Ratcliffe's second evaluation that Plaintiff's concentration was disrupted by her mood and obsessional thinking, she has prominent vegetative symptoms that would disrupt work attendance and performance, she has difficulty focusing, is easily overwhelmed with panic and scattered thinking AR 858, 860. According to the testimony by the VE, if Plaintiff required two or more unexcused absences per month for mental/physical conditions, she could not perform work as required to sustain employment. AR 70. If she required prolonged unscheduled extra rest breaks, she could not work. AR 70. Finally, if Plaintiff was off task 15-20% of the workday, at unpredictable times, she could not sustain work. AR 70. These hypotheticals were grounded in Dr. Ratcliffe's evaluation. The vocational expert responded that such a person would be unemployable. This would require a finding that plaintiff is disabled.

E. Alcohol Abuse and the Bustamante Procedures

Claimants are not considered disabled and eligible for benefits if alcoholism or drug addiction is a contributing factor. 42 U.S.C. §§423(d)(2)(C), 1382c(a)(3)(J); *Bustamante v. Massanari*, 262 F.3d 949, 954 (2001). To determine whether substance abuse is a contributing factor, the ALJ must first conduct the five-step inquiry "without separating out the impact of alcoholism." *Bustamante*, 262 F.3d at 955. If the ALJ finds the claimant not disabled, then no further analysis is required. The ALJ should conduct the five step inquiry without attempting to determine the impact of substance abuse on the claimant. *Id*. Only if the ALJ makes a finding

of disability, is further evaluation required to determine of the claimant would still be disabled in the absence of substance abuse. *Id*.

In this case, the ALJ determined, "[t]he claimant's symptoms are exacerbated by alcohol use, but she is still able to perform within the above residual functional capacity." AR 19. Thus, the ALJ determined that, despite her alcohol abuse, Plaintiff was not disabled. Had the ALJ been correct in determining Plaintiff's RFC, he would have been correct in not addressing further the effect of her alcohol abuse.

But as discussed above, the ALJ was *not* correct in his determination of Plaintiff's RFC. The record establishes that Plaintiff was disabled, during the relevant time period. To determine whether she is entitled to benefits, however, it is necessary to determine whether her alcohol abuse was a contributing factor to her disability.

## CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and the case REMANDED for further proceedings. In those proceedings, the Commissioner should apply the Court's determination that Plaintiff has established her disability; but should determine whether her alcohol abuse was a contributing factor. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, must be filed with the Clerk and served upon all parties to this suit no later than fourteen (14) days after the date on which this Report and Recommendation is signed. If no timely objections are filed, the Clerk shall note this matter for the earliest Friday after the deadline for objections, as ready for the Court's consideration. Failure to file objections within the specified time may affect your right to appeal.

If objections are filed, any response is due within fourteen (14) days after being served with the objections. A party filing an objection must note the matter for the court's consideration fourteen (14) days from the date the objection is filed and served. Objections and responses shall not exceed twelve pages.

DATED this 1st day of August, 2014.

JOHN L. WEINBERG
United States Magistrate Judge